# SUPREME COURT OF TENNESSEE,

### FOR THE

# WESTERN DIVISION,

JACKSON,. . . . . . . . . . . . . . . : . . . APRIL TERM, 1882.

8L 703
14L 363

---

### E. A. CLARK, Tax Collector, v. JOHN Y. KEITH.

1. PLEADINGS AND PRACTICE. *Verdict of jury, general and special.* When a jury returns a general verdict and also returns special findings, the latter, if to be regarded for any purpose, are not of such consequence that an inconsistency between them and the general verdict will impair the effect of the latter.

2. BANK OF TENNESSEE. *New issue. Evidence. Burden of proof that the notes were illegally issued.* In an action against a tax collector, under the provisions of chapter 44 of the acts of 1873, page 71, entitled, "to facilitate the collection of revenue," to recover back money paid for taxes due the State, after a refusal of such tax collector to accept notes of the Bank of Tennessee, bearing date since the 6th of May, 1861, tendered in payment of such taxes. *Held:*

   1. The plaintiff was required first to make proof of the genuineness of the notes tendered.

   2. After such proof of the genuineness, if the defendant relied upon the fact that the notes had been issued in aid of the rebellion against the Government of the United States as the ground of his refusal to accept them, the burden of proving that they had been so issued was upon the defendant, and it was the province of the jury, upon consideration of all the evidence adduced, to determine whether the defendant had made the necessary proof.

Clark v. Keith.

3. That the notes were issued after the 6th of May, 1861, and during the rebellion, was not evidence that they were issued in aid of the rebellion, since the presumption of the law is that all such notes were issued in the ordinary course of the business of the bank and for lawful purposes.

4. That the issues of the bank, in circulation on the 6th of May, 1861, were exhausted in the purchase of Tennessee war bonds, or in paying checks of the military board, and that thereby it became necessary for the bank to put in circulation the notes which were issued after such date, in order properly to carry on its business, was not evidence that such notes were issued in aid of the rebellion.

5. That the officers of the bank were in sympathy with the rebellion during the time the notes were being issued, is not evidence that such notes were issued in aid of the rebellion.

· 6. To show that the notes were issued in aid of the rebellion, there must be proof that they were issued in some transaction immediately connected with the rebellion, and for the purpose of aiding it.

7. The burden on the defendant of proving that the notes were issued in aid of the rebellion is not shifted by evidence that half or more of the notes of the class to which they belong were issued in aid of the rebellion.

8. If the notes were originally issued for a lawful purpose, the fact that they were afterwards used to aid the rebellion did not affect their validity.

9. If the proof established that the notes were issued in aid of the rebellion, whether for the purpose of being loaned to the rebel authorities of Tennessee, or the Confederate States, or to purchase the bonds of the Confederate States, or the war bonds of Tennessee, or to enable the rebel government to arm and equip or pay troops raised for the purpose of rebelling against the government of the United States, or in any other way, they were void and the State was not bound to receive them for taxes. And if the notes were in fact issued with the intent to aid the rebellion, it is immaterial whether they were issued under impulse, or under contract, or in consequence of force, or as the free will of the Bank of Tennessee, in any event they are equally void.

3. SAME. *Same. State not entitled to notice of non-payment of notes by bank. Taxes.* The State was not entitled to any notice of the non-payment of the notes before it was bound to receive them for taxes under the 12th section of the charter of the Bank of Tennessee, acts of 1837–8, chap. 107, p. 153.

4. SAME. *Same.* · *Act of Legislature suspending specie payment by the bank. Notes receivable for taxes.* The notes of the Bank of Tennessee, lawfully issued after the 6th of May, 1861, notwithstanding the act sus-

pending specie payment from January, 1861, till July, 1862, chap. 5, p. 9 of the acts of the General Assembly at the extra session in January, 1861, have always been payable on demand in gold or silver coin within the meaning of the 12th section of the charter of the Bank of Tennessee, acts of 1837-8, chap. 107, p. 153, and therefore receivable for taxes due the State.

## FROM MADISON.

Appeal in error from the Common Law Court of Madison county. L. B. HORRIGAN, J., sitting by interchange.

J. H. SAVAGE, H. H: HARRISON, HENRY COOPER and ATTORNEY GENERAL LEA for Clark.

SP'L HILL and A. S. COLYAR for Keith.

W. M. RANDOLPH, Special J., delivered the opinion of the court.

This case is here for the third time, and in the meantime has been once to the Supreme Court of the United States. When last here the judgment of the court below was reversed, and the cause was remanded for a new trial solely on the ground that the jury had not returned any general verdict, but had returned only a special verdict, and in that verdict had not found all the facts necessary to support the judgment which the court below had rendered in favor of Keith, the plaintiff, against Clark, the tax collector, as defendant. The particular material fact as to which the jury had returned no finding, was whether the notes of the Bank of Tennessee which Keith had tendered

to Clark, as tax collector, in part payment of the taxes Keith owed the State, had been issued in aid of the rebellion against the Government of the United States. As to this fact the jury reported they were not able to agree: *Keith* v. *Clark*, 4 Lea, 718.

Upon the return of the case there was a trial before a jury in the court below, and there was a general verdict for Keith, and also a special finding as to two facts, and a judgment was pronounced in favor of Keith. A motion for a new trial was made and overruled. A bill of exceptions was tendered by Clark, and was allowed and filed, and he has prosecuted an appeal to this court. The bill of exceptions sets out all the evidence adduced in the court below, the rulings of the court upon various questions arising during the progress of the trial, and the instructions given and those refused, and such exceptions as the appellant reserved.

It is not necessary to state the facts with particularity, as they sufficiently appear in the report of the case, already referred to: 4 Lea, 718.

A general statement of them is that Keith owed the State certain taxes, and for the purpose of paying them, he tendered Clark, the tax collector of Madison county, two notes of the Bank of Tennessee, each for the sum of twenty dollars, issued subsequently to the 6th May, 1861, and of the class usually designated as " Torbet issue " or " new issue," and money enough in addition to make up the amount of his taxes, and Clark refused to receive the notes of the bank, and Keith then paid his taxes in money under protest

Clark *v.* Keith.

and within thirty days afterwards, as permitted by the statute, he brought this action against Clark to recover from him the sum of forty dollars, the amount of the two notes of the bank so tendered by Keith to Clark and so refused by him. As has been stated, the jury found a general verdict for ·Keith. ·The entry upon the record, after stating the empaneling the jury, etc., proceeds:

"Who having arrived at their verdict, upon their oaths do say that they find the matter in controversy in. favor of the plaintiff, and that the plaintiff is entitled to recover from the defendant the sum of $40." This verdict disposed of the whole case, and there · was no necessity for a special finding of facts, as such findings could not possibly affect the consequences necessarily resulting from the general verdict.

The entry of record as to the special findings, which immediately follows the entry already copied as to the general verdict, is in these words. And in response to the following questions they thereupon make the following special findings, to-wit: To the question, "Does the proof show that the Bank of Tennessee did a regular banking business after the 6th of May, 1861—that is, was any part of its business in receiving deposits, paying checks, discounting bills and notes," etc., they find in the affirmative.

And in response to the question, "Does the proof show whether the two notes in issue were issued and paid out in aid of the rebellion or in the ordinary course of banking?" they find in the negative.

Taking the language used in the question, and the

jury's answer to it literally, it may be doubtful if it amounts to an affirmance that the notes tendered by Keith to Clark were not issued or paid out in aid of the rebellion. The jury undoubtedly intended so to affirm; and the general verdict they returned, assuming they were governed by the instructions the court gave them, necessarily found that the notes had not been issued in aid of the rebellion. To interpret the finding, therefore, as meaning only that the proof did not show whether the notes in controversy were issued and paid out in aid of the rebellion, or were issued and paid out in the ordinary course of the business of the bank, would be to impute an idle question to the court or a frivolous answer to the jury, since the question and answer so understood could not have been of the least importance in the trial of the issues in the case. In support of the general verdict, and of the judgment of the court below, we shall, therefore, assume that the jury has found, as a fact in the case, that the notes tendered by Keith and refused by Clark were not issued or paid out in aid of the rebellion.

We feel the less hesitancy in adopting this construction of the special finding, since none of the able counsel on either side have understood it differently, but all of them have argued the case as if the jury had found the fact to be just as we assume they did. However, were we to concede that the language employed in the special finding could not be interpreted to mean that the notes in question had not been issued in aid of the rebellion, we should not feel au-

thorized even then to disregard the general verdict,
which, as has been said, clearly found the fact to be
that way; but, on the contrary, should feel constrained
to reject the special finding and proceed as if there
had been none. In *Furman* v. *Nichol*, 8 Wall., 44,
the court decided that by the 12th section of the char-
ter of the Bank of Tennessee, acts of 1837–38, chap.
107, p. 153, which is in these words, "that the bills
or notes of said corporation originally made payable,
or which shall have become payable on demand in gold
or silver coin, shall be receivable at the treasury of
the State, and by all tax collectors and other public
officers, in all payments for taxes and other moneys
due the State," the State made a contract with
everyone who afterwards became a holder of the notes
of the bank, that the State would receive for all pay-
ments for taxes or other moneys due to it, all the notes
of the bank lawfully issued while the 12th section re-
mained in force, and that such contract, which the
court termed a guaranty by the State, attached to each
note so issued, as much as if written on the back of
it, and went with it everywhere as long as the note
lasted, although after the note was issued the twelfth
section was repealed. The judgment in that case was
that the writ of *mandamus* be awarded, requiring the
clerk of the county court to receive the notes of the
bank which the plaintiff in the petition for *mandamus*
had tendered in payment of the taxes due the State
by them.

The notes involved there had been issued prior to
the 6th of May, 1861, and in deciding the question

before it, the court expressly declared that "the discussion of the principles which settle this case is not intended by the court to apply to the issues of this bank, while under the control of the insurgents, because such a case is not before us, and it will be time enough to decide the important questions which it would present when it arises, if it ever should arise." We must regard *Furman* v. *Nichol* as having established the proposition that notes of the Bank of Tennessee, such as Keith tendered Clark, should have been received by Clark in payment of the taxes Keith owed the State, unless there is a difference between those notes and the notes involved in *Furman* v. *Nichol*, growing out of the fact that the notes tendered by Keith were dated after the 6th May, 1861, and those involved in *Furman* v. *Nichol* were dated before that time. The question whether or not there was such a difference, arose in the case of the *State and Watson* v. *Bank of Tennessee*, 5 Baxt., 1.

But the controversy there was between the holders of the notes and the bank, the question as to the obligation of the State upon the notes not being involved. The decision was, "that the notes of the bank issued since May, 1861, held by Atchison and Duncan and set out in their answer, are legal and subsisting debts of the bank, entitled to payment at their face value, and having the same priority of payment out of the assets of the bank as the notes issued before the 6th May, 1861." In that case the court assumed the law to be, that if the notes were in fact issued and put in circulation in aid of the rebellion, they were for

Clark *v.* Keith.

that reason illegal and void. The proposition, we presume, would not be denied anywhere. The court then decided that as a matter of law and upon the evidence before it, the particular notes in question had been issued "by a board of directors legally appointed and qualified for the legitimate purposes of the ordinary business of the bank, and therefore that the act of issuing the notes to be so used was legal and valid, unless their issuance was so connected with and dependent upon the illegal contract for the purchase of the war bonds and the payment therefor as to constitute a part of that illegal contract." Whether the issuance of those notes was connected with and dependent upon such illegal contract, the court then proceeded to examine, and concluded that "it was apparent that there was no necessary connection between the contract to buy the bonds and the issuance of the new notes."

This general conclusion was announced. It follows that the notes issued by the bank after the 6th of May, 1861, for the legitimate purposes of banking, when put in circulation by the bank in its ordinary operations, took the character of money and were in all respects subject to the laws which govern the circulation and transfer of bank bills, as distinguished from those that govern as to the circulation and transfer of promissory notes. They were not, properly speaking, evidences of debt or security for money, but were treated as money in the ordinary course and transaction of business by the general consent of the community. They were transferable by delivery, and were issued and put in circulation with the avowed

intention that they should pass from hand to hand
and circulate as money. In this view the liability of
the bank to pay them remained, and was a continuing
promise to pay, until actual refusal of payment upon
demand made. But the State, as already remarked,
was not before the court, and nothing was decided, as
the court expressly said, upon the question, "whether
the State is bound to receive the new issue in pay-
ment of taxes, as she was bound to receive the old
issue."

The question whether the State is bound to accept
the issue of the Bank of Tennessee made after the
6th of May. 1861, in payment of the taxes due it,
was directly presented for the first time, so far as we
are informed, in the present case. When this case
was first determined here, at the —— term, 187—, it
appears there was no written opinion, but only an af-
firmance of the judgment of the lower court refusing
the *mandamus* to compel Clark, as tax collector, to
receive the notes tendered by Keith in payment of
the taxes Keith owed the State. That judgment was
taken by writ of error before the Supreme Court of
the United States and there reversed, and the case
was remanded here for further proceedings, in accord-
ance with the opinion of that court.

That opinion thereby became the law of this case,
and this court so assumed when this case was here
before: *Keith* v. *Clark*, 4 Lea, 718.

It follows that the only questions open now for
consideration, are such as that court has not passed on
in this case, and our inquiries are to be confined to

such questions, and the question whether the instructions of the court below are in harmony with the opinion of the Supreme Court of the United States. We say this, because an examination of the record has satisfied us thatt he objections made by the appellant to the rulings of the court below, upon questions of evidence, if not altogether without foundation, are of a character not to authorize a reversal of the judgment under the requirements of section 4516 of the Code.

And as for a review of the findings of the jury upon the facts, it is scarcely to be expected that this court should go into such a review, when one of the counsel for the appellant stated in his oral argument that had he been on the jury, he should have felt obliged, under the instructions of the court, to have returned the same verdict which the jury did return. It may not, however, be improper to remark that the evidence in this case does not seem to us to be any stronger in favor of the appellant than the evidence in the case of *State and Watson* v. *Bank of Tennessee,* 5 Baxt., 1, was in favor of the bank; and in that case this court arrived at a conclusion upon the facts the same in substance as the verdict of the jury in this case. Neither do we deem it necessary to consider the correctness of the judgment of the court below on the questions of pleading which were presented, since it is quite clear that under the pleadings as settled by the court, the appellant was permitted to make every substantial defense he relied on. The objection that the court below permitted the counsel of Keith to read to the court, in the presence of the jury, from

the report of the case of *State and Watson* v. *Bank of Tennessee*, 5 Baxt., 51 to 56, each inclusive, is without merit. The course to be pursued on such occasions must necessarily be left to the discretion of the judge trying the case—and this court cannot undertake to control his discreton, unless in a case where it is apparent that injustice has been done. In this case the court below was at particular pains to correct any impression that may have been made on the minds of the jury by what was read. At the time of the reading, and again in the instructions given, the court told the jury that what was read had nothing to do with the case, and that they would pay no attention to it. Recurring then to the case of *Keith* v. *Clark*, 97 U. S., 454, we find these propositions in substance decided:

1. That the notes issued by the Bank of Tennessee subsequently to the 6th of May, 1861, and while the State was in rebellion against the Government of the United States, were not necessarily void; but, on the contrary, if issued in the ordinary course of the business of the bank, were obligatory upon the State under the 12th section of the charter of the bank, and receivable by it for the payment of taxes which might be due it, to the same extent as the notes issued before May 6, 1861.

2. That the notes of the Bank of Tennessee, in fact issued in aid of the rebellion against the Government of the United States, were absolutely void, and the State could not be compelled to receive such notes so issued in payment of taxes due it.

3. That the question, whether the particular notes of the bank now in controversy were or were not issued in aid of the rebellion, was one of fact proper to be determined upon the evidence to be adduced in the case, and that the party asserting their invalidity was required to set up and prove the facts on which such invalidity depended, and that no presumption could arise from anything of which the court could take judicial notice, that the notes were issued in aid of the rebellion, or on any consideration forbidden by the constitution or laws of the United States.

In addition to what was decided by the Supreme Court of the United States in this case when there, this court decided when the case was here before, these propositions: (1) That this suit had been properly brought under the provisions of chapter 44 of the acts of 1873, p. 71, entitled "An act to facilitate the collection of revenue," approved 21st March, 1873. (2) That the statute of limitations had no application to the notes of the Bank of Tennessee tendered by Keith to Clark as tax collector, in the payment of the taxes Keith owed the State. In the opinion delivered by Patterson, Special Judge, it is said: "It follows, then, that the whole question is resolved into one of fact to be determined by a jury according to ordinary rules of evidence. The law presumes that the Bank of Tennessee put into circulation the Torbett issue in the ordinary course of its business for lawful purposes. The law will not presume the illegality of a tranaction, but the illegality must be made to appear by proof. The direct question to be resolved by the jury

in this case is, were the two bills tendered by the plaintiff to the defendant, in payment of his taxes, issued by the Bank of Tennessee in aid of the rebellion?" This' may be shown by proof that the identical bills were issued in aid of the rebellion, or that the class of notes to which they belong were issued and circulated in aid of the rebellion. In either case the burden of proof is on the defendant. It would not be sufficient to show that the issues of the bank in circulation on the 6th day of May, 1861, were exhausted in the purchase of Tennessee war bonds, and that thereby it became necessary for the bank to put in circulation the "Torbett issue," in order to properly carry on its business, for the necessity of doing an act altogether legal, may grow out of an act done by the same person which is altogether illegal": *Keith* v. *Clark*, 4 Lea, 727, 728. It only remains to examine the instructions given by the court below, and those it declined to give, and to determine, whether or not, in those rulings, the court committed error.

And, first, let us see what the instructions were. The court told the jury in substance, that before the plaintiff could recover, the evidence must show that he owed that amount of taxes to the State; that he tendered forty dollars of the lawfully issued bills. of the Bank of Tennessee, and that the defendant, as State Tax Collector, refused to accept the bank bills in payment of said taxes, and that the plaintiff paid his said taxes under protest to the said collector, and that the plaintiff within thirty days after payment commenced this suit. The burden of proof, the court

Clark *v.* Keith.

told the jury, to establish by a preponderance of evidence, all these essential elements to a recovery, was upon the plaintiff. If they found the propositions first stated in favor of the plaintiff, then the plaintiff was entitled to a verdict, and to recover the amount of his damages. * * * * That the burden was upon the plaintiff to show that the bills sued upon were genuine, that is to say, the lawful issues of the Bank of Tennessee, duly signed by the president and cashier of the bank." The court continued:

"If the Bank of Tennessee was taken possession of by persons in rebellion to the government of the United States, and by such persons managed in the interest of the said rebellion, or if the agents of the bank were coerced to manage the bank in the interest of the said rebellion, then, under such a state of facts, all the notes of said bank, signed and issued during the existence of such a state of facts, are void as to the State, and the State is not bound to receive them for taxes, and if you find the bills here sued upon, fall within this rule, the defendant is entitled to a verdict. Although there may not have been any actual force used or directly threatened to induce the managers of the bank to surrender the management of the bank to the authorities in rebellion, if it appears to your satisfaction that the agents of the bank believed, and had reasonable grounds to believe, that there was no escape from seizure by the rebel element, and that the officers had no other means to avoid persons in rebellion, from taking possession of the property of said bank, and that by reason of such facts, the offi-

cers of the bank yielded the management of the bank
to the rebel authorities, then all of the bills of the
bank, signed and issued during such a state of facts,
are void as to the State, and are not receivable for
taxes due the State, even if it should also appear
that the lawfully appointed officers of the bank were,
by such rebel authorities, permitted to hold their offices
in said bank, subject to the control of the rebel au-
thorities, and signed and issued bank bills. If you
find that the bills sued upon fall within the above
rule, you will find for the defendant. If you find
that the officers of the bank, of their own free will,
for the express purpose of aiding the rebellion against
the United States, signed and issued bills of said bank
for the purpose aforesaid, then all the bills of the
bank, so signed and issued, are void as to the State,
and not receivable for State taxes."

The court further charged: "If the bills here sued
upon were signed by the lawful officers of the bank,
the law presumes they were issued in due course of
banking business, and for a lawful purpose. The bur-
den of proof is upon the defendant to establish his defense
that the notes herein sued upon, or the whole series
to which they belong, were issued for an illegal purpose,
that is, to aid the rebellion. If the defendant has failed
to show such fact, you will then find for the plaintiff.
If you find from the evidence that the whole se-
ries of bills signed and issued by said bank after
May 6, 1861, were made and issued by the officers
of the bank for the purpose of aiding the rebellion,
then, unless you believe that one or both of said bills

were signed and issued before said date, you will find for the defendant. If you believe from the evidence that the volume of currency of said bank had become reduced, by reason of aid given by said bank to the rebellion, and that it became necessary, in order to transact the ordinary and legitimate business of the bank to meet the lawful demands on said bank, to sign and issue what is known as the Torbett or new issue, then bills of the bank so signed and so issued, are receivable by the State for taxes due the State If the bills of the bank were signed and issued for a lawful purpose, and afterwards come into the hands of the agents of the Rebel States or Confederate States government, and were used to aid the rebellion, the bills of said bank so signed and so issued, are receivable for taxes due the State. If you find that the bills of the said bank, called the Torbett issue, were all made and signed by the officers of the bank for the express purpose of aiding the rebellion, then all of said issues are void as to the State, and not receivable for State taxes. The burden of proof is upon the defendant to show this state of facts. All the bills of the said bank made, signed, and issued by the officers of said bank for the purpose to loan to the Rebel authorities of Tennessee, or of the Confederate States, or to purchase the bonds of the Confederate States, or the so-called war bonds of Tennessee, for the purpose to enable the said Rebel government to arm, equip and pay troops raised for the purpose of rebelling against the government of the United States, are void as to the State, and if the bills here sued upon fall

within the above rule, you will find for the defendant. It was lawful for the bank to continue the business of banking during the rebellion against the government of the United States, and all bills of the bank signed and issued by the lawful officers of said bank for legitimate banking business, are receivable by tax collectors of the State in payment of State taxes. If a part of the Torbett issue was made and signed by the proper officers of the bank to aid the rebellion, and the other part of said issue was made, signed and issued for the purpose of doing a legitimate banking business, and you cannot say from the evidence in the case, that the notes here sued on were issued in aid of the rebellion, or were signed and issued for legitimate banking business, then you should find for plaintiff. In other words, the law presumes that the notes here sued upon were issued for a lawful purpose, and the burden of proof is upon the defendant to show otherwise, before the defense can be sustained. In determining the question whether or not the Torbett issue or the notes here sued upon were issued in aid of the rebellion or not, you will look to all the evidence in the case, both direct and circumstantial. All of the facts in evidence before you will be considered in determining this question. The statement of fact, in the opinion of the court in the case of *State and Watson* v. *Bank of Tennessee,* 5 Baxter, 1, read by the counsel for plaintiff, will not be considered by the jury. The jury will alone decide this case upon the testimony in this case.

You are the sole and exclusive judges of the facts.

The court cannot aid you in deciding the facts further than to give you the rules of law applicable to the evidence in this case. You are, however, bound to accept the law as given you by the court, and apply it to the facts in this case. You will consider and construe the charge of the court, including the special instructions all together."

There was more of the charge, but it is not deemed necessary to notice any more here. One other instruction will be noticed further along.

The plaintiff asked certain instructions, but the court gave only the following asked by him.

The question is resolved into one of fact, to be determined by the jury according to the ordinary rules of evidence.

The law presumes (after proof that the bills in controversy are genuine), that the Bank of Tennessee put into circulation the Torbett issue in the ordinary course of its business for lawful purposes. The law will not presume the illegality of a transaction, but the illegality must be made to appear by proof. The direct question to be settled by the jury in this case, is, were the two bills tendered by the plaintiff to the defendant in payment of his taxes issued by the Bank of Tennessee, in aid of the rebellion? This may be shown by proof that the identical bills were issued in aid of the rebellion, or that the class of notes to which they belonged, were issued in aid of the rebellion. If the proof shows that the identical notes sued on were issued in aid of the rebellion, or that the whole of the class to which they belonged were issued

46—VOL. 8.

in aid of the rebellion, then you should find for the defendant. In either case the burden of proof is on the defendant. It would not be sufficient to show that the issues of the bank in circulation on the 6th of May, 1861, were exhausted in the purchase of the Tennessee war bonds, or in paying the checks of the military board, and that thereby it became necessary for the bank to put in circulation the Torbett issue in order to properly carry on its business. If the proof shows that some of the notes of the bank were issued in aid of the rebellion, and others were issued and paid out in due course of banking, but the proof fails to show to which class these two notes belong, then, under the decision of the Supreme Court fixing the burden of proof on the defendant, your verdict should be for the plaintiff. It is not enough in order to make out a case of aiding the rebellion to show that the officers of the bank were in sympathy with the rebellion, but to make a case the notes in controversy must have been issued and paid out on some transaction immediately connected with the rebellion, and for the express purpose of aiding it, and to show this the burden of proof is on the defendant."

The defendant asked the following instructions which the court gave: "If the notes in question were issued with the intent to aid the rebellion, whether done under impulse, under contract, or force, or the free will of the Bank of Tennessee, they are void under the fourteenth amendment to the Constitution of the United States; that there could be no innocent holders of the bills issued in aid of rebellion, such bills

being void in the hands of all persons; that aid to the rebellion might be shown by circumstances, and to prove that the Torbett issue was issued in aid of rebellion, the jury might look to the message of Governor Harris and the acts and resolutions of the Legislature of 1861, read to the jury as evidence showing how the facts were; that certain designated acts of the General Assembly were rebellious, and acts done under them were null and void. The defendant asked the court to charge the jury that if the Bank of Tennessee issued one million dollars for legitimate business, and a million dollars to aid the rebellion, and if it did not appear to which class the bills in dispute belonged, the proof being equal, the plaintiff must fail. He asked the same instruction on the supposition that the jury should find that a majority of the notes issued by the Bank of Tennessee after the 6th of May, 1861, were issued to aid the rebellion. He asked the court to tell the jury that, in such a case, it would be incumbent on the plaintiff to prove that the notes he had tendered had been issued for a lawful purpose. The defendant also asked the court to instruct the jury that the State was entitled to notice of non-payment of the notes in question before it could be bound upon its guaranty for the payment of them, and also, that if the jury found for the defendant on any one of the pleas on which issues had been joined, they should return a verdict for him. The court refused all these instructions.

Of this last instruction it is sufficient to say, the court had given specific instructions covering the whole

case, and such a general instruction could have been
of no possible aid to the jury in arriving at a cor-
rect verdict, but could only have mislead them, if it
could have had any effect at all.     Assuming the in-
struction was not technically erroneous, the court should
not have given it under the circumstances.     As to the
instruction that the State was entitled to notice of the
non-payment of the notes before it could be bound on
its contract contained in the 12th section of the char-
ter of the Bank of Tennessee, we need say no more
than that the position has not a particle of reason or
authority to rest upon.     The other instructions asked
by the defendant and refused by the court, were the
reverse of the instructions the court gave, and if the
court was right in giving the latter, it was necessa-
rily right in refusing the former.

After a careful comparison of the charge of the
court, with the principles which we have seen, have
been established to govern the decisions of this case,
we have not been able to detect the slightest error of
which the appellant has the right to complain.     In ar-
gument, one of the counsel for the appellant said, the
effect of the court's instruction was to tell the jury
that if a million dollars of the notes of the Bank of
Tennessee, issued since the 6th of May, 1861, were
issued in aid of the rebellion, and only two twenty-
dollar notes were issued in the ordinary course of
the business of the bank for lawful purposes, that it
would be incumbent upon the appellant to establish,
by proof, that the two notes in question in this case,
were not the two which were so lawfully issued.     If

Clark v. Keith.

the instructions the court gave could legitimately bear the construction thus put upon them, it is by no means admitted that they would have been erroneous. But the court used no language supposing an extreme case, or that intimated to the jury that the principal it laid down to govern their action should be pressed beyond the bounds of reason. The evidence adduced did not tend to establish any such state of facts as that a million dollars, or any large sum of the notes of the Bank of Tennessee, issued since the 6th of May, 1861, were issued in aid of the rebellion, while only two twenty dollars or some other insignificant sum were issued for lawful purposes. It is possible the evidence in the record established in effect just the reverse of each of the assumptions. Whether it does or not, we need not say. But we do say that taking the charge of the court as a whole, and putting a fair interpretation upon it, it correctly told the jury that the genuineness of the notes was first to be proved by the appellee, and after he had made such proof, that the burden of proving that the notes had been issued for an unlawful purpose, or in aid of the rebellion, was upon the appellant, and that in determining whether or not the evidence showed that the plaintiff had made the necessary proof, the jury was to look at all the evidence in the case and arrive at such a conclusion as that evidence in their judgment warranted. This was the substance of the decisions of the Supreme Court of the United States and of this court on the questions, and was what the court should have told the jury.

There is one question not yet noticed, which is presented in the record as follows: The court below told the jury that at the time the notes here in question bear date, a bank note issued payable in dollars, was payable in gold or silver, and that this rule applied to the notes of the Bank of Tennessee, and that the fact that the bank had suspended specie payment prior to, and even after the date of the notes, did not affect the legal right of the holder of them to demand payment in gold or silver. The appellant asked the following instructions, which the court refused to give: "That the notes tendered to the defendant and offered in evidence must be bills or notes of the Bank of Tennessee, originally payable on demand, or which should become payable on demand, in gold or silver coin, in order to make them receivable by the defendant in payment of taxes due the State, and if the proof fails reasonably to satisfy the jury that they were so payable on demand, then they should find for the defendant. That all notes issued by the Bank of Tennessee after the passage of the act of the General Assembly of Tennessee, legalizing the suspension of specie payments, were not within the provisions of the 12th section of the bank charter.

That the bills of the Bank of Tennessee were not payable on demand in gold and silver, after the passage of the act of Congress making greenbacks or United States Treasury notes a legal tender, and after the passage of said act the bills of the bank were not within the provisions of the 12th section of the bank charter, or receivable for taxes by defendant." If what

the court told the jury on this subject in the paragraph copied above was correct, then all the above instructions asked by the appellant were properly refused. It has been very earnestly argued that the notes tendered by Keith to Clark, are not such as the State was obliged by the 12th section of the charter of the Bank of Tennessee, to accept in payment of taxes due it, because they were "not originally made payable," and have never "become payable on demand in gold and silver coin." It is not denied that the notes were payable to bearer on demand in dollars, and were issued that they might be circulated as money. But assuming these facts, the argument is, that as the notes were issued after the passage of chapter 5, page 9, of the acts of the General Assembly at the extra session in January, 1861, and before the first of July, 1862, they were issued at a time when the bank was not required to redeem them in coin, and as the Congress of the United States, before the 1st of July, 1862, by law, declared the treasury notes of the United States, popularly known as greenbacks, a legal tender, in payment of all debts, public and private, with certain exceptions, not material here, the bank never, at any time, was bound to redeem the notes in coin. The manifest chief purpose of the act of the General Assembly of January, 1861, just referred to, was to relieve the banks of the State, which had accepted the provisions of the act passed on the 8th of February, 1860, being chapter 27 of the acts of 1859–60, from the results which that act had declared should follow a suspen-

sion by them of specie payment in redemption of their notes for a consecutive period of one hundred and twenty days in any one year: See sec. 20, pp. 21-22 of the acts of 1859–60. It seems to us an entire misapprehension to suppose that the obligation of those banks to pay coin in redemption of their notes arose out of anything contained in the act of the 8th of February, 1860. The Congress of the United States alone had the right "to coin money and regulate the value thereof," and the State was prohibited to make "anything but gold and silver coin a tender in payment of debts," and the act of 1860, upon its face, assumes the fact that the notes of the banks it was intended to regulate were necessarily redeemable in gold or silver coin, and in nothing else, and wholly omits any express requirements as to the manner in which such notes should be ultimately redeemed. It is impossible, therefore, to infer any intention on the part of the General Assembly in passing chapter 5 of the acts of the extra session of 1861, to change the requirements of the pre-existing law as to the medium in which the circulating notes of all the banks in the State to be issued after the passage of the act, should be payable. That all the notes of all the banks issued before the passage of the act under consideration, were legally redeemable in gold and silver coin, and not in any other way, will not be denied.

That the act of 1861 attempts, in words, to declare that the notes to be issued by the banks of the State after its passage, should be redeemable in something else than gold or silver coin, or that gold or

silver coin should not be demanded in payment of them, cannot be claimed. Had the General Assembly intended the act should be understood as having the effect that is now claimed for it on the part of the appellant, does any one suppose it would have left its intention to be inferred from the language it has used, which, it must be admitted, conveys in terms no such idea? On the contrary, the very fact of the suspension of payment in specie for a limited time, that is, until 1st of July, 1862, at which time, by the terms of the act, payment in specie was to be resumed, carried along with it the further fact that between January, 1861, and July, 1862, payment in specie was the payment the law required of the banks for all their notes, and that such payment between January, 1861, and July, 1862, was deferred or dispensed with by the General Assembly for reasons which it deemed satisfactory. But the act wholly omitted to provide that between January, 1861, and July, 1862, the notes to be issued should be redeemable in anything other than gold or silver coin. The act made no distinction between notes issued before its passage, and notes to be issued afterwards. Suspension of payment of all of them was authorized. And so, when the time for resumption came, all of them, those issued during the suspension, as well as those issued before the passage of the act, were to be redeemed in specie. The sole purpose of the General Assembly was to waive the rights or prerogatives of the State for a definite time, upon the assumption that for the time the interest of the general public would be thereby subserved. The lan-

guage used was to permit the banks, which had accepted
the provisions of the act of February 8, 1860, to sus-
pend and remain in a state of suspension of specie pay-
ment until 1st of July, 1862.    It applied to no other
banks.    And to convey the idea that the act was in-
tended to affect only the rights or prerogatives of the
State, the last proviso to section 1, is in these words:
"That nothing contained in  this  act shall be construed
to affect  the rights of individuals against said banks."
Did the purpose of the act not appear to us as plainly
as it does, we should feel bound to put the construc-
tion upon it we have adopted, since that contended
for by the appellant, in our opinion, would render the
act obnoxious to the provisions of the Constitution of
the United States to which we have already referred.
The notes in question, in our judgment, have always
been payable by law in gold or silver coin, in the
sense of the 12th section of the charter of the Bank
of Tennessee.

On their face, too, they are payable on demand.
The 12th section was unquestionably put into the char-
ter in order to give the notes of the bank additional
credit.    The manifest policy of the State was to sup-
port the credit of the bank, and the act of January,
1861, is itself evidence of that policy.    To give it
the construction which is claimed for it by the appel-
lant, would be to suppose that the State intended to
weaken the bank by withdrawing a guaranty of its
notes, which, up to that time, had been deemed essential
to the beneficial working of the bank.   When it was
necessary to come to the relief of all the banks by

permitting them to suspend specie payment temporarily,. certainly was not a fit time for the State to withdraw from the bank, of which it was the sole owner, and whose prosperity had, from its beginning, been a cherished object, the support which, up to that time, had been assumed to be a necessity. The State undoubtedly had the right to waive the requirement of the 12th section of the charter, so far as it required the notes referred to in it to be payable in gold and silver coin on demand. And were we to admit that the act of January, 1861, had the effect of making notes of the Bank of Tennessee, issued after its passage, payable differently from those issued before that date, we should rather conclude that the State waived the requirement that the notes issued after that date should be payable in gold and silver on demand, than that it intended wholly to withdraw its guaranty from such notes.

It is quite probable that this last question has been closed by the decisions already made in this case by the Supreme Court of the United States, and by this court, and is not now open for consideration. When this case was last here, this court said: "If the notes were not issued in aid of the rebellion, it is manifest that it was the duty of the defendant, as tax collector, to receive the bills tendered by plaintiff, in payment of his taxes:" *Keith* v. *Clark*, 4 Lea, 723.

The question suggested in the quotation seems to have been the only one which the court then regarded as undecided. Without determining whether that was so or not, we have thought it best to consider the

question and to give our conclusion upon it as if it was properly presented for decision. We have not particularized in this opinion all the instructions asked for by the appellant and declined by the court, as they are quite numerous and cover many pages of the record. We have passed upon all the questions suggested in the oral arguments, and in the briefs of the counsel, and all that occurred to us as properly presented by the record. To have discussed the instructions not noticed separately, would have been an unnecessary waste of time.

The result is, that we find no error in the record, and the judgment of the court below must be affirmed.